UNITED STATES, Appellee,

v.

Sergeant Oscar C. PURDY, 454–06–1054,
United States Army, Appellant.

ARMY 9301153.

U.S. Army Court of Criminal Appeals.

19 April 1995.

For Appellant: Major Roy H. Hewitt, JAGC (argued); Captain Teresa L. Norris, JAGC (on brief); Captain Norman R. Zamboni, JAGC.

For Appellee: Captain Anthony P. Nicastro, JAGC (argued); Colonel John M. Smith, JAGC, Major Lyle D. Jentzer, JAGC (on brief); Lieutenant Colonel James L. Pohl, JAGC.

Amici curiae on behalf of appellant: Charles T. Bumer, Esquire, Bridget J. Wilson, Esquire, Jeffrey Lake, Esquire (on brief)—For the Military Law Task Force of the National Lawyers Guild.

Before CUTHBERT, EDWARDS, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

EDWARDS, Senior Judge:

Pursuant to his plea, the appellant was found guilty by a military judge of consensual sodomy in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1988) [hereinafter UCMJ]. Contrary to his pleas, the appellant was found guilty by a general court-martial composed of officer and enlisted members of attempting to commit sodomy with a male under sixteen years of age, wrongful solicitation of a male under sixteen years of age to commit sodomy, and indecent liberties with a male under sixteen years of age in violation of Articles 80 and

134, UCMJ.[1] The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for five years, and reduction to Private E1.

Before this court, the appellant asserts six errors, and, in an appendix attached to the Brief on Behalf of the Appellant, the appellant personally asserts five additional matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). In addition, a brief of Amicus Curiae was filed by the Military Law Task Force of the National Lawyers Guild on behalf of the appellant. This brief asserts that three reversible errors were committed by the military judge.

We have carefully reviewed the record of trial, the issues raised on behalf of and by the appellant, the government's answer thereto, and the oral arguments presented to this court. The following issues raised on behalf of the appellant warrant a brief discussion.

### I. Ineffective Assistance of Counsel

The Sixth Amendment guarantees an accused the assistance of competent counsel in trials by court-martial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). Counsel is presumed competent, and the latitude accorded counsel in the many decisions which must be made while preparing for defending a case is, by necessity, wide. To prevail on a claim of ineffective representation, appellant must first demonstrate errors committed by his counsel, and demonstrate that the error or errors were prejudicial, that is, but for the errors of counsel the outcome of the trial would have been different. *Id.* However, tactical decisions made by counsel, if reasonable, are not second-guessed on appeal, and they are viewed from counsel's perspective under the then prevailing circumstances. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A.1993).

Before accepting the appellant's pleas of guilty to soliciting an unknown male to com-

mit sodomy (Specification 1 of Charge I) and sodomy with Sergeant (SGT) M (Charge III and its Specification), the military judge assured himself that the appellant was satisfied with his trial defense counsel in all respects. Moreover, the appellant informed the military judge that he had no complaints regarding his trial defense counsel. The pleas of guilty were then accepted by the military judge.

■ The appellant asserts that his defense counsel, Captain (CPT) M, was not a zealous advocate and that CPT M was ineffective at virtually every stage of the proceedings. We find that the appellant's assertions are without merit.

Contrary to the appellant's allegations, we find CPT M's advocacy to have been commendable. He began by extensively litigating nine pretrial motions including: a motion for a new Article 32(b), UCMJ, investigation; a motion requesting that the court appoint a psychiatric expert to the defense team; a motion to suppress pretrial statements; a motion in limine to exclude uncharged misconduct; a motion to suppress three photographic identifications; a motion that Charge III (consensual sodomy with SGT M) was improperly preferred; a motion to sever Charge III; a motion to dismiss and/or consolidate charges on the grounds of multiplicity; and a motion to compel discovery. Captain M argued each motion persuasively and was successful in obtaining a court-appointed psychiatric expert for the defense team and suppressing two of the three photographic identifications made of the appellant by the fourteen-year-old victim.

■ The appellant also alleges that CPT M was particularly ineffective during the voir dire portion of his court-martial. We find that CPT M's conduct before the panel in voir dire was excellent. Furthermore, his approximately 106 questions were likewise very effective and appropriately directed at touching upon the members qualifications.

---

1. The appellant's plea of guilty to soliciting an "unknown male" to commit sodomy was accepted, as provident, by the military judge. Before the members, the government proved beyond a reasonable doubt that the "unknown male" was,

in fact, the named victim, a fourteen-year-old male. The consensual sodomy (Charge III and its Specification) involved the appellant and a Sergeant M.

It was from these questions that CPT M was successful in having two members removed for cause before the defense exercised its preemptory challenge against a third member.

■ We further disagree with the appellant's dual assertions that his counsel was ineffective for failing to object to comments made by the military judge during voir dire, and that these comments were disparaging toward homosexuals. In his initial questions CPT M asked if any member believed that homosexuals are bad people. The military judge interrupted and said, "the question is too broad ... homosexual acts are against the law in the military ... someone who did something against the law would be potentially a bad person." Shortly thereafter, CPT M asked if any member believed that homosexuals should not be trusted. The military judge again interrupted stating that there are security implications in the Army surrounding homosexuals. Captain M responded that there was no hard data on that issue, and the military judge told him to "move on."

We find that while the military judge's comments were not artful, they did not equate to a bias or prejudice by the military judge toward homosexuals. We further find that the military judge's comments were not per se disparaging. The appellant was charged with committing four sexual offenses which violated the law. He had entered provident pleas of guilty to two of the offenses. We find that the appellant's sexual orientation and/or preference neither caused nor controlled the destiny of the charges against him.

■ We note that a court member who harbors an inelastic attitude or bias toward a certain offense, or a particular type punishment for an offense is not qualified to sit as a member of a court-martial. *United States v. Heriot*, 21 M.J. 11 (C.M.A.1985); Rule for Court–Martial 912(f)(1)(N) [hereinafter R.C.M.]. On the other hand, a member is not automatically disqualified if he is candid enough to admit to an unfavorable inclination toward a particular offense. *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A.1987). The test to be applied is whether any bias evidenced by a member is such that "it will not yield to the evidence presented and the judge's instructions." *Reynolds*, 23 M.J. at 294; *United States v. Davenport*, 17 M.J. 242 (C.M.A.1984).

■ The voir dire of the members was extensive and thorough. Therefore, we look at their responses as a whole, rather than isolating on one particular response. We find that every member who remained on the appellant's court-martial panel was appropriately qualified. Moreover, they assured the military judge that they would follow his instructions. The law does not require a court member to forget or disavow one's life experiences or views. What is required is that the members express and reflect a willingness to determine the sentence on the basis of matters presented in open court. *Davenport*, 17 M.J. at 245. Our review of the entire voir dire process leads us to conclude that each remaining court member was forthcoming in their responses and qualified for the panel.

Captain M's advocacy during the merits of the court-martial was solid. He presented the defense theory of the case to the panel in a short, but understandable, opening statement. This was a case of "anonymous sexual promiscuity." The appellant was facing three sexual offenses that had a fourteen-year old male as the victim. The need to impress upon the members that the appellant was soliciting unknown males and not specifically targeting children was of the utmost importance to the appellant's case.

Captain M's cross-examination of the government's witnesses highlighted the defense's strengths and revealed the government's weaknesses. He established that the victim was positive that he had kicked the appellant's penis while it had been allegedly exposed through a hole in a latrine stall wall, and while the hole had jagged edges around it, there was no injury to the appellant's penis. He established that the appellant had cooperated fully with the law enforcement investigators and had been very forthcoming in his confession to those incidents, of which he had pleaded guilty. He argued that the confession had been very detailed and that

the appellant did not expose himself as the government was attempting to prove.

Captain M used this evidence in his closing argument and effectively summarized the appellant's case for the members. He emphasized the extensive cooperation the appellant had given to the investigators and the implausibility of the young victim's testimony.

Finally, during the presentencing portion of the trial, CPT M did an outstanding job when he cross-examined the victim's mother. She testified that she was concerned about her son's mental well-being and the effect the incident with the appellant would have on her son's development. The victim's mother admitted, during CPT M's cross-examination, that her son had said that this incident was "no big deal" and that it had not caused him any loss of sleep or problems. Captain M then called two supervisors that testified that the appellant was a "nine" or a "ten" as a soldier.[2] In conclusion, he had the appellant make an unsworn statement which detailed his outstanding service in Desert Shield/Storm and established that he provided support to his sole child. We note that the appellant's sentence did not include any forfeitures.

As we stated above, we disagree with appellant's allegations here. We find that his counsel performed extremely well. Accordingly, we find that the appellant has not carried his burden of showing defective counsel performance, and has not overcome the presumption of counsel competency. *See United States v. Morgan*, 37 M.J. 407 (C.M.A.1993).

## II. *In Camera* Review of Victim's Mental Health Records

■ We now turn our attention to appellant's assertion that the military judge erred when he failed to conduct an *in camera* inspection of the fourteen-year-old victim's medical records pursuant to the defense counsel's motion to compel discovery. The appellant alleges that he should have been granted access to these psychological medical records in order to rebut testimony solicited from the victim's mother regarding her concerns about her son's well-being and mental

development. It should be noted that neither the defense, nor the government, had access to the requested material as the treating psychiatrist refused to produce the documents short of a patient waiver or court order. In fact, the government made reasonable efforts to obtain these materials but was denied access by the victim's doctor. *See United States v. Higdon*, 2 M.J. 445, 451 (A.C.M.R.1975).

■ A de novo approach is taken by appellate courts in reviewing a trial judge's determination whether a requested document was material to guilt or punishment, and favorable to the defense. *United States v. Charles*, 40 M.J. 414, 417 (C.M.A.1994). At trial the appellant failed to establish that the victim's medical records were material. *See* R.C.M. 701(a)(2)(B). There was no expert testimony concerning the mental status of the victim offered in the government's case-in-chief. Moreover, the medical records would not have improved on CPT M's outstanding cross-examination of the victim's mother during presentencing. We note that it is indeed common for a parent to be concerned about the mental well-being and development of their children, no matter what the circumstances. In this case, CPT M successfully cross-examined the mother and she acknowledged that her son felt that the incident was not a "big deal;" he was not having sleeping problems; and the actual psychiatric diagnosis was that the event had no effect on him. We are confident, no matter what might have been contained in the medical records, this mother's testimony would always reflect her parental concerns, and, at best, she would only concede her son's comments that the incident had no affect on him. Accordingly, we find that the military judge did not abuse his discretion when he denied the appellant's request for production of the victim's medical (mental health) records.

Assuming, arguendo, that the military judge did err, for the reasons stated above, we find that any arguable error was harmless beyond a reasonable doubt.

---

**2.** The rating scale was from one to ten with ten being the highest rating.

### III. Maximum Permissible Period of Confinement

■ The appellant's final assertion of error that merits discussion is that the military judge erred when he informed the court members that the maximum confinement in this case was reduced from fifty-two years down to twenty-five years. The military judge made this comment as he was apparently ruling, and speaking, out loud on a sentence multiplicity issue with the court members present. The military judge informed the court members that, for sentencing purposes, the three offenses involving the fourteen-year old victim merged into one offense.

■ The military judge erred. Court members should not be informed of the reasons for the maximum period of confinement. They should only be concerned with the maximum imposable sentence and not the basis for the limitation. *See United States v. Frye,* 33 M.J. 1075, 1079 (A.C.M.R.1992); *United States v. Eschmann,* 11 U.S.C.M.A. 64, 28 C.M.R. 288, 291 (1959). This court may reassess a sentence if we are able to determine what sentence the trial court probably would have imposed if there had been no error. In this case, we can do so. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986); *United States v. Olson,* 38 M.J. 597, 601 (A.F.C.M.R. 1993) (military judge overstated the maximum confinement period by 100% and court reassessed) (citing *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990)); *United States v. Crowe,* 30 M.J. 1144 (A.F.C.M.R.1990), *pet. denied,* 32 M.J. 43 (C.M.A.1990).

The adjudged sentence was not imposed by the court members because they heard the military judge say, "fifty-two years." We have no doubt about this. We find that the court members arrived at the adjudged sentence because the sentence was appropriate.

In reassessing we have given individualized consideration to the appropriateness of the sentence, weighing the nature and seriousness of the offenses, the character and military performance of the appellant, and all the circumstances documented in the record of trial. We are confident that the adjudged sentence of a bad-conduct discharge, confinement for five years, and reduction to Private E1 is appropriate. *See United States v. Snelling,* 14 M.J. 267 (C.M.A.1982).

We have carefully considered the remaining assignments of error, to include those personally raised by the appellant pursuant to *Grostefon,* and find them to be without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms the sentence.

Chief Judge CUTHBERT * and Judge GONZALES concur.

---

* Chief Judge THOMAS R. CUTHBERT took final action in this case prior to his reassignment.