OPINION OF THE COURT
BECKER, Judge:
Today we address, among other issues, an allegation of unlawful command influence, presented in the context of a conversation between court members allegedly overheard during a trial recess, and the scope of a military judge’s discretion in ruling on a challenge for cause. The command influence *694 issue is before us in our Article 66[1] review of the appellant’s case, and also by way of a petition for new trial referred to us under Article 73, UCMJ.[2] We hold the appellant’s allegations are insufficient to raise an issue of unlawful command influence, and reject his other assertions of error. We also deny his petition for new trial.
I. BACKGROUND
A military judge accepted the appellant’s guilty plea to one specification of conduct unbecoming an officer in violation of Article 133, UCMJ.[3] A general court-martial composed of officer members then convicted the appellant, contrary to his pleas, of one specification of distributing cocaine in violation of Article 112a, UCMJ.[4] His approved sentence is a dismissal, confinement for two years, and forfeiture of $2000 per month for two years.
Appellant was a married emergency room physician at Seymour Johnson Air Force Base, North Carolina. He has prior active duty service as an Army physician. Mrs. G is the young wife of an Air Force enlisted man, Airman First Class G. Appellant saw Mrs. G as a patient, treating her for a variety of medical problems. Appellant used this professional contact as a springboard for a personal relationship, which included drinks at a bar, rides in his sports car, and discussion of a motel room rendezvous. Appellant admitted this unbecoming conduct, which formed the basis for his guilty plea to the Article 133 offense. At the appellant’s request, the military judge informed the court members of his guilty plea before they heard evidence on the contested cocaine distribution charge.
The remaining facts are in dispute. According to Mrs. G, she admitted past use of cocaine during one of her conversations with the appellant. Subsequently, the appellant told Mrs. G that he could supply her with some. Mrs. G told her husband about her relationship with the appellant, including his cocaine offer. Airman G was irate, and reported the matter to the Air Force Office of Special Investigations (AFOSI) at Seymour Johnson. AFOSI agents contacted Mrs. G and she agreed to help them. AFOSI agents monitored a telephone conversation between the appellant and Mrs. G, and set up a “sting” operation in a Seymour Johnson billeting room.
AFOSI installed a video camera (picture only, no sound) in the billeting room. Mrs. G knew there was a camera, but the agents did not tell her where it was. By happenstance, the appellant put several bottles in front of the camera, obscuring the view of the appellant and Mrs. G much of the time. As a result, we never see cocaine produced by either the appellant or Mrs. G. However, while the appellant is out of the room getting ice, we have an unobstructed view of Mrs. G, and she does not take anything from her body or clothing. Upon Mrs. G’s signal that cocaine had been passed, agents entered the room, discovered cocaine spread out on a table, and apprehended the appellant. AFO-SI also seized a razor blade and a straw cut in two pieces from the appellant’s briefcase.
Appellant testified he was the victim of an extortion scheme cooked up by Airman and Mrs. G. According to the appellant, Mrs. G must have secreted the cocaine in her clothes or a body cavity, taken it out while he was out of the billeting room getting ice, and signaled AFOSI agents to enter. Appellant explained he used the razor blade to cut up his own prescription medication into smaller doses, and cut the straw so Mrs. G could play with the pieces. He then described receiving “anonymous” letters — but written in such a way to obviously imply that the author was Airman G — demanding money in exchange for dropping the charges. Appellant’s civilian lawyer submitted these letters to a private forensic consultant, who discovered a hidden, indented writing[5] on one letter. *695 This hidden writing purported to be the full signature of Airman G.
II. UNLAWFUL COMMAND INFLUENCE
Appellant’s trial lasted six days. On day four, a Mr. Farrell attended the trial as a potential sentencing witness for the appellant. Mr. Farrell is a retired Army major now working in Georgia as a sheriffs officer. Mr. Farrell was the appellant’s commander during the appellant’s prior Army service, and has remained his friend. As a potential witness, Mr. Farrell was not present during the proceedings, but remained in the immediate area of the courtroom.[6] By the fourth day of the trial, the members had known of the appellant’s guilty plea to conduct unbecoming an officer for three days, and had been hearing evidence on the contested cocaine distribution charge for most of that time.
About two weeks after the trial, Mr. Farrell sent a letter to the Secretary of the Air Force decrying the results of the trial, and describing a conversation he overheard between two officers he believed were members of the appellant’s “jury.” According to the letter, Mr. Farrell was seated in the stall of a men’s room near the courtroom. He overheard two men talking about the case. The gist of one man’s comments was that, but for the “ ‘fuck up’ at tail hook [7] and the command interest, this guy would get off with a slap on the wrist.” His companion replied, “‘Shit happens, as long as it’s not us.’ ” Mr. Farrell then rose in his stall, saw the men were Air Force lieutenant colonels wearing “Blue [service dress] uniforms.” Both wore aviator wings, and one also wore “jump wings” (i.e., a parachutist badge). Six male lieutenant colonels served on the appellant’s court-martial. Four were aviators, and two of these also wore jump wings. Court-martial participants all wore service dress uniform.
Because of this letter, the military judge convened a posttrial Article 39(a)[8] session, according to Rule for Courts-Martial 1102(b)(2). He took testimony from Mr. Farrell and considered, without defense objection, affidavits from all court members. Mr. Farrell repeated under oath the allegations in his letter to the Secretary. In addition, he said one speaker referred to the female trial counsel using a crude, anatomic metaphor. Mr. Farrell said he could not identify any court member as either speaker because he had not seen the speakers’ faces. He explained his failure to bring the conversation to the attention of the court, the appellant, or the defense counsel as the product of his desire to avoid getting anyone in trouble. According to Mr. Farrell, he changed his mind and wrote the Secretary only after learning the trial results, which he considered unjust. Each court member’s affidavit averred that he was “absolutely certain” he never overheard, participated in, or was aware of any such conversation.
In his posttrial ruling, the military judge was skeptical of Mr. Farrell’s testimony. However, he found that Mr. Farrell “sincerely believes” the conversation took place, but that the conversation “is now being filtered through the emotionally charged memory of an individual who has seen a close friend, of whose innocence he remains absolutely convinced, convicted of felony charges.” The military judge denied relief, ruling “[t]here is no evidence that any unlawful command influence, direct or indirect, was brought to bear upon the members in this case.”
General Rules and Standards of Review
“No person subject to [the Code] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial____” Article 37(a), UCMJ.[9] It is an *696 axiom that unlawful command influence is the mortal enemy of military justice. United States v. Thomas, 22 M.J. 388, 393 (C.M.A. 1986), cert, denied, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Military courts have addressed issues of unlawful command influence allegedly occurring in a variety of contexts, during both the pretrial and adjudicative stages of courts-martial. See United States v. Weasler, 43 M.J. 15, 17 (1995) and cases cited therein; see also United States v. Washington, 42 M.J. 547, 554-57 (A.F.Ct. Crim.App.1995).
In any situation, however, the burden of producing evidence of unlawful command influence is on the appellant. United States v. Stombaugh, 40 M.J. 208, 213 (C.M.A.1994), cerf. denied, — U.S.-, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995). The issue is not raised until the appellant meets this burden. United States v. Ayala, 43 M. J. 296, 300 (1995). Once an appellant satisfies his burden of production, the burden of proof is on the government to disprove the allegation. Stombaugh, 40 M.J. at 213-14. If unlawful command influence is present, that fact alone does not mean corrective action must follow. United States v. Gleason, 43 M.J. 69, 73 (1995). We may still affirm trial results if we conclude beyond a reasonable doubt that any unlawful command influence did not affect a conviction or sentence. Id.; Stombaugh, 40 M.J. at 214; Thomas, 22 M.J. at 394.
Concerning the appellant’s initial burden of production, “the threshold triggering further inquiry should be low, but it must be more than a bare allegation or mere speculation.” United States v. Johnston, 39 M.J. 242, 244 (C.M.A.1994). “[T]here must be something more than an appearance of evil to justify action by an appellate court in a particular case. ‘Proof of [command influence] in the air, so to speak, will not do.’ ” United States v. Allen, 33 M.J. 209, 212 (1991), cert, denied, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). To carry his burden of production,
... an appellant must (1) “allege[ ] sufficient facts which, if true, constitute unlawful command influence”; (2) show that the proceedings were unfair; and (3) show that
the unlawful command influence was the proximate cause of that unfairness____
Stombaugh, 40 M.J. at 213 (quoting United States v. Levite, 25 M.J. 334, 341 (C.M.A. 1987) (Cox, J., concurring)) (emphasis added). To meet the first prong of this test, an appellant must do more than submit generalized, unsupported claims that persons felt affected by command influence. There must be evidence that someone “acting with the ‘mantle of command authority unlawfully coerced or influenced” the court-martial. Ayah, 43 M.J. at 300; see also Stombaugh, 40 M.J. at 211.
If a command influence issue has been addressed at trial, we will defer to the military judge’s findings of fact, unless they are clearly erroneous. United States v. Wallace, 39 M.J. 284, 286 (C.M.A.1994); Washington, 42 M.J. at 556. However, whether “unlawful command influence” flows from those facts is a question of law, which we review de novo. Id.
Decision
Our review of the military judge’s posttrial ruling is hampered somewhat by his imprecise findings of fact. The key factual issues before the military judge were plain: Did the conversation described by Mr. Farrell take place and, if so, were the speakers court members? If the military judge’s findings had directly addressed these issues, under the clearly erroneous standard we would have likely accepted them whichever way they had gone. However, the military judge did not make a finding that the conversation did or did not happen, only that Mr. Farrell “sincerely believes” that it happened. This neat sidestep may have avoided a tough credibility call, but it is of little help to us.
However, we believe the military judge’s doubts about Mr. Farrell’s testimony are well founded. There is much here that does not ring true. Mr. Farrell is a friend of the appellant, quick to condemn the conviction even though he heard none of the evidence. His account has a burlesque quality that invites skepticism. We are not naive about either command influence or the often limited vocabularies of military members. How *697 ever, the heavy-handed references to the “fuck up at tail hook” and “command interest,” plus the touch of vulgarity directed at the trial counsel, all while Mr. Farrell — apparently functioning in full “stealth” mode— conveniently eavesdropped from the stall, add up to something that is a bit too good to be true. Moreover, it does not make sense that this “Tailhook”-related conversation would take place three days after the members had been told the appellant had pleaded guilty to conduct unbecoming an officer with Mrs. G, and in the middle of trial on the contested cocaine distribution charge. We also wonder how Mr. Farrell could identify the badges on the speakers’ chests without seeing either man’s face. Finally, we find it incongruous that Mr. Farrell was so incensed that he wrote the Secretary of the Air Force, but did not immediately tell his friend, the man on trial.
Despite these dubious aspects of Mr. Farrell’s story, the military judge’s finding that Mr. Farrell sincerely believed his.account to be true is not clearly erroneous, and we accept it. From there, we will assume — but do not find — that Mr. Farrell’s testimony is substantially accurate. However, even with that assumption, we agree with the military judge that the appellant still has not presented sufficient evidence to raise the issue of unlawful command influence.
Appellant has presented no evidence that anyone “acting with the mantle of command authority” attempted to influence this court-martial. In Ayala, the Court of Appeals for the Armed Forces made clear that this is the foundation element for any claim of unlawful command influence. Without evidence showing action with the mantle of command authority, all the subjective perceptions in the world add up to nothing more than proof of command influence “in the air, so to speak.” As we all well know, this will not do.
We hold that the appellant has presented only a generalized, unsupported claim of unlawful command influence. This is insufficient to meet the first prong of the Stombaugh-Levite production test (to “allege[] sufficient facts which, if true, constitute unlawful command influence”). Therefore, he has failed to carry his burden of production. We need go no further to reject this assignment of error.
Petition for New Trial
After the military judge denied his command influence claim in the posttrial Article 39(a) session, the appellant submitted a petition for new trial under Article 73, asserting Mr. Farrell’s story as “newly discovered evidence.” We reject his arguments here as well.
In the usual case, “newly discovered evidence” comes to light after authentication of the record of trial, and we act on petitions for new trial without benefit of a ruling below. See, e.g., United States v. Sztuka, 43 M.J. 261 (1995). In such cases, we naturally apply a de novo standard in deciding if the petition meets Article 73 criteria, although we may need to order a DuBay[10] factfinding hearing. R.C.M. 1210(g)(1); United States v. Giambra, 33 M.J. 331, 335 (C.M.A.1991); see also Sztuka, 43 M.J. at 267-68.
Here, however, the underlying basis for the appellant’s petition has been addressed by the trial judge. A posttrial Article 39(a) session is the approved procedure for addressing issues of juror misconduct which come to the attention of the military judge after adjournment but before he authenticates the record of trial. See R.C.M. 1102(b)(2) (Discussion); United States v. Stone, 26 M.J. 401, 403 (C.M.A.1988). If the military judge had found merit in the appellant’s allegations, he had the power to set aside the findings and sentence. United States v. Scoff 29 M.J. 60, 65 (C.M.A.1989).
A petition for new trial is not intended as a means to relitigate issues raised and adversely decided below. United States v. Bacon, 12 M.J. 489, 492 (C.M.A. 1982). Because the appellant litigated this issue below, we apply a different standard when passing on this petition. We review the military judge’s decision using an abuse of discretion standard, although the appellant has now packaged his arguments as an Article 73 “petition for new trial.” United States *698 v. Williams, 37 M.J. 352, 355-56 (C.M.A. 1993).
In light of our previous de novo Article 66 review of the appellant’s command influence allegations, our decision on his petition for new trial is obvious. The military judge did not abuse his discretion in ruling Mr. Farrell’s testimony insufficient to raise an issue of unlawful command influence. The petition for new trial is denied.
III. CHALLENGE FOR CAUSE
During individual voir dire, a court member (Lieutenant Colonel M) revealed his daughter was a recovering cocaine addict. When asked by the defense counsel if this experience “would even enter so slightly into the back of your mind while you are listening to the facts and circumstances of this case,” Colonel M replied:
In trying to be as open and honest as I can, I would like to think it would not effect [sic] me, I can’t guarantee that. Drugs [are] a part of our society. The users of drugs and the distributors of drugs are the two ends of the same equation. I don’t like either one, but I don’t think that this ... It’s my duty to determine guilt and innocence. What happens to impact that and what happens beyond that ... No, I don’t see the impact____ I guess that’s about as honest as I can be. What happened to my daughter happened to my daughter---- I don’t even think about the other end of it.
(Emphasis added). Then came the following exchange:
CDC: Sir, you told us, and again, I am trying to repeat what I thought you said, and that was that you felt you would try hard if it were your duty to do that, but that you could not guarantee that you would be able to do that. Is that fair for the court to understand that that’s your feeling right now?
MEM: Right. It was my daughter. I mean, it’s going to effect [sic] me some. [----] Intellectually I don’t think it will.
(Emphasis added). The trial counsel then asked Colonel M if he “could tell [the appellant] that you would decide his case fairly?” Colonel M replied ‘Yes. In fact, if I had a choice I would want someone who knows a little bit more than just what he reads in the paper.” He also responded affirmatively to the trial counsel’s request for his assurance to the appellant that he had “no predisposition towards him, [regarding] either guilt or innocence, or sentencing or anything.”
The defense challenged Colonel M for cause based on his daughter’s experience and his inability to guarantee it would not enter his mind during deliberations. The trial counsel opposed. The military judge denied the challenge, explaining his ruling as follows:
I have certainly had plenty of opportunity to observe Colonel [M], and he struck me as being very objective even though he has had an experience that has been unpleasant for him. I think he was being quite candid in the fact that in many ways having been exposed to some real life problems, that that makes him much more objective in some ways rather than the other way around____
Appellant then exercised his peremptory challenge against another court member, thus preserving this issue for review. See R.C.M. 912(f)(4).
General Rules and Standard for Review
A military judge must grant a challenge for cause against anyone who “[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.” R.C.M. 912(f)(1)(N). As we explained in United States v. Barrow, 42 M.J. 655 (A.F.Ct.Crim.App.1995), court member bias takes two general forms. “Actual bias” is present when a member has personal beliefs or attitudes that will not yield to the evidence or the law. In contrast, “implied bias” exists when — applying an objective standard — the member’s continued presence casts substantial doubt on the legality, fairness, and impartiality of the trial. Id. at 660 (citing United States v. Reynolds, 23 M.J. 292 (C.M.A.1987) and United States v. Moyar, 24 M.J. 635 (A.C.M.R.1987)).
When an “actual bias” has been disclaimed by a member, the military judge *699 concentrates on the reliability of the disclaimer. The issue “is essentially one of credibility, and therefore largely one of [the member’s] demeanor.” Patton v. Yount, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L. Ed.2d 847 (1984), quoted in Barrow, 42 M. J. at 660.
For “implied bias,” however, the military judge’s focus is not on the member’s disclaimer, but on “the system’s appearance of fairness” to those observing the process. Barrow, 42 M.J. at 660. “Thus, the military judge should grant a challenge for cause if necessary to preserve the appearance of fairness in the trial, even if the judge believes the challenged member will be impartial.” Id. at 661. The importance of an objective appearance of fairness was recently reinforced by the Court of Appeals for the Armed Forces in United States v. Dale, 42 M.J. 384 (1995). In Dale, the court held that the military judge erred in denying a challenge for cause of a security police officer who “[f]or all intents and purposes ... was the embodiment of law enforcement and crime prevention at [the base],” despite the member’s apparently sincere assurances of impartiality. Id. at 386. (quoting United States v. Dale, 39 M.J. 503, 508 (A.F.C.M.R. 1993) (Pearson, J., dissenting)).
A military judge should apply a liberal standard in granting challenges for cause. United States v. White, 36 M.J. 284, 287 (C.M.A.1993), cert denied, — U.S.-, 114 S.Ct. 918, 127 L.Ed.2d 212 (1994). However, we give great deference to a military judge’s rulings on challenges, and will not overturn a denial of a challenge for cause except for a clear abuse of discretion in applying the “liberal-grant mandate.” Id. In reviewing such rulings, we consider a member’s voir dire responses as a whole, and not just isolated portions. United States v. Purdy, 42 M.J. 666 (Army Ct.Crim.App. 1995); United States v. Hutchinson, 15 M.J. 1056, 1062 (N.M.C.M.R.1983), rev’d on other grounds, 18 M.J. 281 (C.M.A.), cert, denied, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984).
Decision
This was a close call for the military judge. The challenge for cause against Colonel M was the only one the defense made. We have little doubt that many military trial judges would have granted the challenge. We also believe many trial counsel would have joined the challenge, thus ensuring an appearance of fairness and avoiding a gratuitous appellate issue. Notwithstanding, we are unwilling to conclude that the military judge clearly abused his discretion in allowing Colonel M to remain on the court.
We have little difficulty upholding the military judge’s decision in regard to Colonel M’s alleged “actual bias.” Appellant bores in on the isolated snatches of Colonel M’s voir dire responses emphasized above, arguing these clearly show his inability to set aside his daughter’s experience and judge the appellant fairly. Taken as a whole, however, Colonel M’s responses paint a different picture. Colonel M was a first-time court member. In all likelihood, this was the only time anyone had asked him how his daughter’s cocaine addiction would affect his ability to impartially judge a fellow officer accused of cocaine distribution. Colonel M verbally debated the issue with himself — “thinking out loud” — before deciding in his own mind that he would be fair. The military judge, who observed Colonel M’s demeanor, was in the best position to evaluate Colonel M’s responses. Barrow, 42 M.J. at 660. He found Colonel M’s disclaimer credible, and we have no reason to dispute his conclusion.
It is the “implied bias” issue which gives us pause. Any time a court panel includes someone who has suffered, either personally or through the pain of a close family member, the effects of a crime closely associated with a charged offense, the system’s appearance of fairness is necessarily implicated. See United States v. Reichardt, 28 M.J. 113 (C.M.A.1989); United States v. Smart, 21 M.J. 15 (C.M.A.1985); United States v. Porter, 17 M.J. 377 (C.M.A.1984); Barrow; United States v. Campbell, 26 M.J. 970 (A.C.M.R.1988); Moyar. However, military precedent is quite clear that a member is not disqualified solely because he or she, or a family member, has been the victim of a *700 crime similar to one charged. Reichardt, 28 M.J. at 116; Smart, 21 M.J. at 19; Barrow, 42 M.J. at 660. Colonel M not only disclaimed actual bias, but also assured the appellant of his lack of predisposition. The military judge found Colonel M’s “real life” experience “makes him much more objective in some ways rather than the other way around----” We find this to be a fair reading of Colonel M’s voir dire responses.
Although this may be a close call, Judge Pearson has observed that “after all, close calls are what exercising discretion is all about.” Barrow, 42 M.J. at 661. We hold the military judge did not clearly abuse his discretion in denying the challenge for cause against Colonel M.
IV. FACTUAL SUFFICIENCY OF THE EVIDENCE: COCAINE DISTRIBUTION
Before we may affirm the appellant’s conviction for cocaine distribution, the evidence must convince us of his guilt beyond a reasonable doubt. Article 66(c), UCMJ; United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987). Appellant contends Mrs. G’s poor credibility, flaws in AFOSI’s “sting” operation, his sworn denial, and the evidence of Airman and Mrs. G’s alleged extortion plot add up to a reasonable doubt. We disagree.
Mrs. G had no credible motive to falsely accuse the appellant. She did not know where the video camera was in the billeting room. From the appellant’s standpoint, he made a fortuitous choice in putting his beverage bottles down in front of the camera, but Mrs. G could not have knowingly taken advantage of this. Moreover, the appellant was not as lucky in his timing. If Mrs. G had secreted the cocaine somewhere in her body or clothing, the obvious opportunity to take it out was when the appellant was out getting ice — before he blocked the camera with the bottles. During this unobstructed view of Mrs. G, the camera records her sitting quietly and doing nothing. Mrs. G’s testimony is further corroborated by the monitored telephone call, where the appellant told Mrs. G he had her “stuff,” and the paraphernalia seized from the appellant’s briefcase. We accord little weight to the appellant’s explanations for this evidence.
We also find the “extortion plot” to be incredible. Trial counsel’s cross-examinations and rebuttal case effectively exposed this as a fabrication, concocted by the appellant and sprung on the prosecution at the last minute. Indeed, the trial counsel so effectively undermined the forensic evidence offered to support the “plot” that the appellant now asserts his trial defense counsel was ineffective in his selection of the defense’s expert witness.
The court members saw and heard the witnesses, including Mrs. G and the appellant, and had the best opportunity to assess their credibility. See Article 66(c), UCMJ. The members rejected the appellant’s testimony and were convinced beyond a reasonable doubt that he distributed cocaine as alleged. We reach the same conclusion.
V. REMAINING ISSUES AND CONCLUSION
Appellant warms over his command influence arguments by claiming at least two court members (the ones Mr. Farrell allegedly overheard in the men’s room) falsely responded in voir dire to questions about their ability to reach an impartial verdict. However, he has not demonstrated any member failed to honestly answer a material voir dire question. Therefore, this assignment of error must fail. See United States v. Modesto, 43 M.J. 315, 319 (1995) (citing McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) and United States v. Mack, 41 M.J. 51 (C.M.A.1994)).
Appellant challenges, as plain error, the military judge’s instruction defining the “beyond a reasonable doubt” standard, citing Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Court of Appeals for the Armed Forces resolved this issue against the appellant in United States v. Robinson, 38 M.J. 30 (C.M.A.1993).
Appellant claims the deficient services of his civilian defense counsel deprived him of his Sixth Amendment right to effective assistance of counsel. Chief among his *701 complaints is that his lawyer selected a poor-quality forensic expert, thereby enabling the trial counsel to effectively impeach the expert’s testimony concerning the “extortion letters” allegedly sent by Airman G to the appellant. However, a defense counsel’s failure to “shop around” for a more favorable expert is not ineffective assistance. United States v. Loving, 41 M.J. 213, 250 (1994) (citing Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir.), cert, denied, 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992)), cert, granted, — U.S. -, 116 S.Ct. 39, 132 L. Ed.2d 920 (1995); also Roach v. Martin, 757 F.2d 1463, 1477 (4th Cir.), cert, denied, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985). Appellant’s remaining complaints concern tactical decisions, which we will not second-guess. United States v. Morgan, 37 M.J. 407, 410 (C.M.A.1993); Washington, 42 M.J. at 552. Our review of the record reveals a performance by defense counsel which comfortably passes Sixth Amendment muster. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); United States v. Scott, 24 M.J. 186, 188 (C.M.A.1987).
Lastly, the appellant contends that two addenda to the staff judge advocate’s posttrial recommendation to the convening authority contain new matter, requiring service on the defense with an opportunity for comment. See R.C.M. 1106(f)(7). We do not agree. The addenda do not contain factual matter outside the record of trial (including the posttrial Article 39(a) session) and the defense’s posttrial submission. Remarks in the addenda addressing defense posttrial arguments are not “new matter” requiring service for additional comment. Id. (Discussion); United States v. Komorous, 33 M.J. 907 (A.F.C.M.R.1991).
The findings and sentence are correct in law and fact. Accordingly, they are
AFFIRMED.
Senior Judge PEARSON and Judge MORGAN concur.

. Article 66, UCMJ, 10 U.S.C. § 866 (1994).

. 10 U.S.C. § 873 (1994).

. 10 U.S.C. § 933 (1988).

. 10 U.S.C. § 912a (1988).

. If one writes something on a pad of paper and removes the top sheet, indentations on the sheets below may still reveal the message. The deeper in the pad one goes, the indentations are more subtle and may require special techniques to make them legible.

. As it turned out, Mr. Farrell did not testify for the appellant, but submitted a written statement which the defense introduced as a sentencing exhibit.

. This is an obvious reference to the well-known scandal which befell the U.S. Navy after the 1991 Tailhook Association convention in Las Vegas, in which many naval aviators were accused of assaulting and harassing women, including fellow officers, and other inappropriate behavior. In addition to the aviators accused of misconduct, several high ranking officers and officials were accused of condoning the behavior.

. Article 39(a), UCMJ, 10 U.S.C. § 839(a) (1988).

. 10 U.S.C. § 837(a) (1988).

. United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).