# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

## UNITED STATES

**v.**

## Staff Sergeant DUSTIN S. PURDY
### United States Air Force

### ACM 38350

### 01 October 2014

Sentence adjudged 1 February 2013 by GCM convened at Hill Air Force Base, Utah. Military Judge: Grant L. Kratz.

Approved Sentence: Bad-conduct discharge, confinement for 21 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Matthew T. King.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A panel of officer and enlisted members at a general court-martial convicted the appellant, contrary to his plea, of one specification of aggravated assault upon a child, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The members acquitted the appellant of a second specification alleging this misconduct on a separate occasion. The panel sentenced the appellant to a bad-conduct discharge, confinement for 21 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

The appellant asserts the military judge erred by allowing the Government to introduce evidence of an uncharged act of violence the appellant committed against his

wife, along with his wife's fear of the appellant. The appellant also challenges the factual and legal sufficiency of his conviction. In this opinion, we also address a separately filed petition for a new trial.

*Background*

The appellant and his wife, Senior Airman (SrA) LP, experienced the birth of their first child, BP, in September 2011. The birth came less than a year into the young couple's marriage. BP was healthy at birth, and an examination at the two-month point revealed no medical problems. Once SrA LP's maternity leave expired, the two parents rotated responsibilities caring for BP because SrA LP worked day shifts while the appellant worked nights.

The morning after the two-month checkup, SrA LP brought BP to her duty location because the appellant was delayed at work. The appellant picked up BP at around 0715 or 0730 hours and took him home. At around 0800 hours, the appellant called his mother and SrA LP expressing concern that BP had sustained a large lump on his head and needed to be examined. SrA LP obtained a medical appointment, but the appellant stated BP needed to be taken to the emergency room immediately. The parents jointly took BP to the local emergency room.

Doctors learned BP had sustained a skull fracture with an underlying hemorrhage. The child was rushed to a nearby hospital and was successfully treated. When investigators questioned the appellant about the source of BP's injuries, the appellant stated he noticed the lump while feeding BP. The appellant stated he had given BP about two ounces of formula and positioned BP to burp him. When this occurred, the appellant stated, BP reared back and then propelled his head forward, striking the appellant's chin with the force of an adult's punch. The appellant stated he then attempted to feed the child the remainder of his formula. When BP would not eat, the appellant stated that he noticed the injury and that BP was behaving abnormally. The appellant's conviction arose out of BP's injuries sustained on this occasion.

The appellant was prohibited from seeing BP for a time. However, this order was later modified to allow the appellant some level of direct interaction with BP. About three months after the first charged incident, the appellant was giving BP a bath when BP began experiencing seizures. No one else was present when this took place. The Government charged the appellant with aggravated assault by shaking BP on this occasion, but the members acquitted him of this specification.

Further facts relevant to the assignments of error are laid out below.

*Evidence of Violence and Fear*

In findings, the Government called SrA LP, among numerous other witnesses. On direct examination, SrA LP essentially testified as to her memories of both sets of injuries to BP. SrA LP testified that she did not cause the injuries[1] and confirmed the appellant was alone with BP during both charged acts. The defense cross-examination focused on issues such as possible accidental explanations for BP's injuries, the fact that both sets of injuries were discovered soon after SrA LP handed the child off to the appellant, and other medical conditions or injuries BP experienced while not in the appellant's care. SrA LP also testified that she and the appellant were in the process of divorce at the time of trial.

After SrA LP's testimony concluded and a recess occurred, a session outside the members' presence took place. Trial defense counsel expressed concern that SrA LP's testimony about the impending divorce might have left the members with the impression that the divorce was due to "some type of fear of violence or something of that nature." Therefore, trial defense counsel asked to recall SrA LP to ask a "very narrow tailored question" as follows: "You are not getting divorced because you believe your husband is a violent person?" The military judge then warned trial defense counsel that it was assuming the risk that SrA LP might allege some sort of violence by the appellant, stating, "[I]t's your own minefield. You can decide how to walk through it."

Upon recall, defense counsel asked SrA LP, "You are not getting divorced from [the appellant] because you believe your husband's violent, correct?" SrA LP replied, "No, sir, he's never been violent towards me and I've never seen anything." A panel member then asked SrA LP to repeat her answer; she replied by stating, "We're not getting divorced because he's ever been violent towards me or that I've seen him be violent towards my son."

Trial counsel then notified the military judge that the Government wished to introduce evidence it believed rebutted SrA LP's testimony. Trial counsel proffered that it had two witnesses who would contradict SrA LP's testimony that the appellant had never been violent toward her. The first witness, trial counsel stated, would testify that SrA LP stated she was afraid to leave the appellant because she thought he would kill her or harm BP. The second witness, according to trial counsel, would testify that SrA LP stated the appellant had been violent toward her. The military judge elicited trial defense counsel's view on the sought testimony; trial defense counsel argued his question to SrA LP was solely aimed at SrA LP's reason for seeking a divorce, not whether any incidents of violence had ever occurred. In any event, trial defense counsel asserted, SrA LP should first be given the opportunity to admit, explain or deny her statement

---

[1] Senior Airman (SrA) LP was initially viewed as a possible suspect in the investigation, and at trial the defense raised the possibility that SrA LP may have caused the child's injuries. SrA LP testified pursuant to a grant of immunity.

before the Government could be permitted to introduce evidence of a prior inconsistent statement.

The military judge ruled the Government's proffered evidence was relevant to impeach SrA LP's testimony. In response to defense counsel's first point, that he only asked SrA LP about her reasons for divorcing the appellant, the military judge noted he had warned defense counsel that this area was a "minefield." As to defense counsel's second point, the military judge stated he was not aware of any requirement to allow SrA LP to be confronted before impeaching her. Regardless, he stated counsel for either side would be allowed to call SrA LP to respond to the evidence of prior inconsistent statements. The military judge also prohibited the Government from eliciting testimony about violence not aimed toward SrA LP or BP, such as a proffered incident of violence toward a dog.

The Government then called its two witnesses who testified substantially as proffered. The defense did not further recall SrA LP to ask about the evidence of prior inconsistent statements.

After the Government and defense rested, the military judge discussed proposed findings instructions with counsel. The military judge informed counsel that he intended to deliver an instruction on use of the two witnesses' testimony under Mil. R. Evid. 404(b). The military judge clarified that he believed the evidence could be used both to demonstrate that the offenses charged were not the result of an accident and to impeach SrA LP's testimony that she had never seen the appellant act violently. He also stated that the evidence might also be utilized to rebut testimony the appellant offered that he is not violent. After allowing counsel to comment upon his proposed instructions, and receiving no objection on this matter from defense counsel, the military judge instructed the members as follows:

> You have heard evidence that the accused's wife may have told another person that she feared the accused or that he . . . had acted violently in the past. You may use this evidence for the limited purpose of its tendency, if any, to rebut any contention that the accused's participation in the offenses charged was the result of accident, to rebut any assertion by the accused that he is not violent, and for the purpose of impeaching [SrA LP's] testimony regarding having never seen the accused act violently.

> You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged.

The appellant now alleges the military judge erred by permitting the Government to introduce this evidence. The appellant asserts the testimony was not relevant to impeach SrA LP's testimony because the thrust of her testimony was her reasons for divorcing the appellant, not whether *any* incidents of violence had occurred. Even if the testimony was relevant, the appellant claims, it could not be introduced as extrinsic evidence without affording the witness an opportunity to explain or deny the statement. Alternatively, the appellant argues, the testimony was improper under Mil. R. Evid. 401 through 405 because it was not relevant to the charged offense; it was unfairly prejudicial; it was not proper evidence of other crimes, wrongs, or acts; and it was not a proper method of proving character.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)) (internal quotation marks omitted).

Mil. R. Evid. 613 covers the admissibility of prior statements of a witness. Part (b) allows extrinsic evidence of a prior inconsistent statement by the witness to be admitted but only if the witness is afforded the opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness upon the statement, unless the interests of justice require otherwise. "If the witness admits the inconsistency, then extrinsic evidence is generally not admissible. If the witness denies making the statement, or equivocates, Mil. R. Evid. 613(b) authorizes the admission of these statements." *United States v. Harrow*, 62 M.J. 649, 656 (A.F. Ct. Crim. App. 2006) (citing *United States v. Meghdadi*, 60 M.J. 438, 444 (C.A.A.F. 2005)). When the evidence is properly admitted, it may only be considered for impeachment rather than substantive purposes to establish the truth of the matter. *Id.*

Under Mil. R. Evid. 404(b), evidence of other crimes, wrongs, or acts is generally not admissible but may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. To introduce evidence under Mil. R. Evid. 404(b), the prosecution must generally provide notice of the evidence before trial. Evidence introduced under Mil. R. Evid. 404(b) must still be admissible under Mil. R. Evid. 403; in other words, its probative value must not be substantially outweighed by the danger of unfair prejudice. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

At trial, the basis for admitting the proffered testimony was not made clear other than it was being offered to rebut SrA LP's testimony that her husband had not been violent toward her or BP. The military judge's instructions indicate he considered the

evidence admissible both as character evidence under Mil. R. Evid. 404 and as evidence of prior inconsistent statements by SrA LP under Mil. R. Evid. 613. The military judge later amended his instructions to indicate the evidence could also be considered to rebut the appellant's testimony on cross-examination that he was not a violent person.

We note, as the military judge did, that trial defense counsel questioned SrA LP about the reason for the divorce at his peril. SrA LP responded by clearly averring that the appellant had "never been violent towards [her] and [she had] never seen anything." Her testimony was responsive to defense counsel's question. As a general matter, this testimony opens the door to testimony that properly rebuts SrA LP's broad statement. However, we assume without specifically finding that the military judge erred in admitting the two Government witnesses' testimony because the military judge's instructions indicated he admitted the testimony at least in part based on Mil. R. Evid. 404(b). Much of the witnesses' testimony arguably did not demonstrate an absence of mistake or accident or other permissible purpose under Mil. R. Evid. 404(b) because it related to the appellant's actions or attitude toward SrA LP, not BP. In addition, the military judge did not explicitly conduct a balancing test under Mil. R. Evid. 403 and did not analyze whether the Government was required to submit advance notice of such evidence.[2]

Even assuming error, though, we find no material prejudice to a substantial right of the appellant. Three primary considerations drive our finding of no prejudice, utilizing the factors identified in *United States v. Goodin*, 67 M.J. 158, 160 (C.A.A.F. 2009) and *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999). First, the military judge issued limiting instructions directing the members that they may not use the testimony for any purpose other than to rebut the testimony of SrA LP and the appellant, and for any tendency it had to rebut the contention that BP's injuries were the result of accident. The members were specifically prohibited from using the evidence to conclude that the appellant was the type of person who would injure his son. We see no reason to suspect the members used the two witnesses' testimony in any improper way, as panel members are presumed to follow instructions given by the military judge. *See United States v. Custis*, 65 M.J. 366, 372 (C.A.A.F. 2007). Second, the testimony was ancillary to the main issues at trial: who caused BP's injuries, and how were they caused. The primary relevance of the Government witnesses' testimony was to rebut SrA LP's testimony

---

[2] To the extent that the military judge's ruling was based on a finding that the testimony was proper evidence of prior inconsistent statements under Mil. R. Evid. 613, we find no error in this portion of his ruling. Trial defense counsel argued that the defense should be given the opportunity to interrogate SrA LP upon the prior inconsistent statement before the Government could introduce evidence of prior inconsistent statements. However, Mil. R. Evid. 613 does not require the witness to be afforded this opportunity *before* the inconsistency has been revealed. *See* Analysis of the Military Rules of Evidence, *Manual for Courts-Martial, United States*, A22-50 (2012 ed.); *United States v. Callara*, 21 M.J. 259, 265 (C.M.A. 1986). The military judge held that either party could recall SrA LP and ask her about any statements she made to the two Government witnesses, thus satisfying the requirements of Mil. R. Evid. 613(b).

elicited from the defense about the reason for the couple's impending divorce. Finally, the extremely brief testimony from these two Government witnesses was dwarfed by the extensive and convincing medical testimony from numerous experts, all of whom agreed BP's injuries were intentionally inflicted at a time that placed the appellant as the likely culprit. We are convinced the admission of the testimony did not prejudice the appellant.

*Factual and Legal Sufficiency*

The appellant alleges his conviction is factually and legally insufficient. He argues that no one saw the appellant strike BP or could definitively state how BP's injuries occurred. Instead, he asserts, the Government's case was primarily built on refuting the appellant's account of how BP sustained his injuries.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The elements of the aggravated assault on a child specification of which the appellant was convicted are as follows:

1) That, at or near Hill Air Force Base, Utah, on or about 22 November 2011, the appellant did bodily harm to BP;
2) That the appellant did so with a certain force by striking BP's head;
3) That the bodily harm was done with unlawful force or violence;
4) That the force was used in a manner likely to produce death or grievous bodily harm; and

5) That at the time of the assault BP was a child under the age of 16 years.

*See Manual for Courts-Martial, United States*, Part IV, ¶ 54.b.(4) (2008 ed.).

We have reviewed the parties' pleadings and the entire record of trial. We find the appellant's conviction factually and legally sufficient. No one saw the appellant strike BP, but no such testimony was necessary in this case. The appellant was alone with BP when medical evidence indicates the injuries occurred. Expert medical testimony compellingly demonstrated that BP's injuries were intentionally inflicted. The appellant's account for how the injuries occurred proved implausible. Other people who had cared for BP in days leading up to his injuries all testified that no harm occurred to the child under their care. The appellant's suggestion at trial that his wife may have caused BP's injuries proved unpersuasive to the members, and likewise, we are not persuaded that anyone other than the appellant caused BP's injuries. Having weighed the evidence in the record of trial, with allowances for not having personally observed the witnesses, we are personally convinced of the appellant's guilt beyond a reasonable doubt. Similarly, we find a reasonable factfinder could have found all the essential elements were proven beyond a reasonable doubt.

*Petition for New Trial*

In a separate pleading, the appellant petitioned The Judge Advocate General for a new trial based upon newly discovered evidence. Pursuant to Article 73, UCMJ, 10 U.S.C. § 873, The Judge Advocate General's office referred the petition to this court. The appellant claims a new trial is warranted because, after trial, he discovered the two witnesses discussed in his first assignment of error testified falsely against him concerning SrA LP's fear of the appellant and the appellant's prior assault of SrA LP. In support of the petition, the appellant attached a declaration from SrA LP stating that she never gave the two Government witnesses reason to believe she was afraid of the appellant or that the appellant assaulted her.

An appellant may petition for a new trial within two years after the convening authority's approval of his sentence based on newly discovered evidence or fraud on the court. Article 73, UCMJ; *see also* Rule for Courts-Martial (R.C.M.) 1210(a). We review the question of whether a petition meets this Article 73, UCMJ, criteria de novo. *United States v. Denier*, 43 M.J. 693, 699 (A.F. Ct. Crim. App. 1995). A new trial shall not be granted on the grounds of newly discovered evidence unless the petition demonstrates:

(A) The evidence was discovered after the trial;

(B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and

(C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2).

"A petition for [a] new trial is not favored and, absent a manifest injustice, will not be granted." *United States v. Niles*, 45 M.J. 455, 456 (C.A.A.F. 1996) (citing *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)). The petitioner bears the "heavy burden" of demonstrating that a new trial is the proper remedy in his case. *Id.* (citing *United States v. Giambra*, 38 M.J. 240 (C.M.A. 1993)).

We find the appellant has failed to meet his heavy burden of demonstrating a new trial is warranted. His petition fails to meet all three prerequisites for issuance of an order for a new trial. SrA LP's declaration gives us no reason to believe the "evidence" the appellant cites—SrA LP's belief that the two Government witnesses did not testify truthfully—was discovered only after trial. Instead, SrA LP actually testified for the defense at trial that the appellant had not been violent toward her. Even if this "evidence" was not known at the time of trial, it easily could have been discovered by the defense, particularly since the military judge told defense counsel they would be permitted to recall SrA LP to testify about the two Government witnesses' testimony. Finally, because we have found no prejudice to the appellant as the result of the two Government witnesses' testimony, the new evidence would not have "probably produce[d] a substantially more favorable result" for the appellant. An order for a new trial is not appropriate in this case.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[3] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[3] We note the court-martial order (CMO) lists the wrong military judge. We direct promulgation of a corrected CMO.

Accordingly, the findings and the sentence are **AFFIRMED**.

Further, the appellant's petition for a new trial is **DENIED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court