**UNITED STATES**

v.

**Master Sergeant Douglas L. BARROW, FR444–62–4879, United States Air Force.**

ACM 30442.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 Oct. 1992.

Decided 10 May 1995.

Appellate Counsel for Appellant: Mr. Frank J. Spinner, Esq. (argued), Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Major Ormond R. Fodrea.

Appellate Counsel for the United States: Major Barnard N. Madsen (argued) and Colonel Jeffery T. Infelise.

Before SNYDER, PEARSON, and SCHREIER, Appellate Military Judges.

OPINION OF THE COURT

PEARSON, Judge.

After a lengthy and hotly litigated trial, court members convicted appellant of sexually abusing his adopted stepdaughter, KDB, while she was under the age of 16, and having an adulterous affair with a female staff sergeant in his unit, BW, which included

sexual intercourse, oral sodomy and one ménage à trois with his wife. The members sentenced appellant to a dishonorable discharge, 5 years confinement, and reduction to E–4.

During the post-trial review of the case, the convening authority set aside two of the convictions: (1) showing sexually explicit magazines to KDB, due to insufficient evidence regarding the place of the offense, and (2) soliciting Staff Sergeant BW to commit indecent acts with his wife, because the members acquitted appellant of a contemporaneous offense alleging he solicited his wife to commit indecent acts with BW. Reassessing the sentence, the convening authority approved only a bad-conduct discharge, 4 years confinement, and reduction to E–4. *See* R.C.M. 1107.

## ISSUES

Appellant asserts the military judge erred in denying challenges for cause against two court members, denying a motion to sever the offenses involving KDB and Sergeant BW, allowing the prosecutor to argue a linkage between the offenses involving the two females, denying a motion to suppress evidence, and allowing the government expert to give inadmissible opinion evidence about child sexual abuse. Appellant also asserts the evidence is factually insufficient to support the convictions for sexually abusing KDB and engaging in oral sodomy with Sergeant BW. We do not find any error materially prejudicial to appellant's substantial rights and affirm. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## GENERAL BACKGROUND

Master Sergeant M, one of appellant's co-workers, began a sexual relationship with KDB in early 1991 when she was 17. KDB told Sergeant M that appellant had sexually abused her since she was very young and, ultimately, M reported the allegations to authorities. The ensuing criminal investigation also revealed appellant's sexual affair with Sergeant BW and culminated in appellant's court-martial for various sexual offenses with KDB, including rape, and a slew of offenses involving sexual acts with Sergeant BW.

## CHALLENGES FOR CAUSE

### Background

During voir dire, Majors C and D both stated they had close family members who had been sexually abused as children. Defense counsel unsuccessfully challenged both members for cause.

Major C stated his adopted son made sexual advances toward his adopted sister, and both children were undergoing therapy. Major C candidly described the intense emotional turmoil his family underwent after the incident and stated local authorities had "adjudicated charges against [his] son." Major C also discussed two cases of child sexual abuse brought against members of his unit when he was a commander. He stated civilian authorities handled both cases, and he did not prefer charges against an airman for abusing a 3–month–old child because he felt "the individual would get more fair treatment downtown."

Major D stated his wife, sister-in-law, and brother-in-law had all been victims of sexual abuse as children, some 20 to 30 years ago. Major D related the acts involving his wife did not include intercourse, she did not receive any psychological counseling, and criminal charges were not filed. However, Major D pointed out that his sister-in-law, a successful business woman, had been "undergoing psychotherapy for quite some time." Based on personal reading about child sexual abuse, he realized "it's a very common occurrence and that in addition, there is potential for a lot of psychological harm later on in life." Major D also said he had a bachelor degree in psychology and had completed 16 hours of graduate study including an internship in social work.

Both court members stated they could be impartial, would not let personal experiences impact on appellant's case, and had not formed any conclusions regarding allegations of rape or child sexual abuse. Major C even stated he found himself "a little more forgiving" toward his son than his wife was, and knew how it felt "to be on both sides of the fence." In the same vein, Major D agreed "as a matter of fact, some of the recent

things on TV and other media is that perhaps some of the allegations are not necessarily true simply because they are allegations."

In challenging Major C, defense counsel conceded she had "no doubts about Major [C's] integrity and willingness to be impartial." This prompted the military judge to ask, "Then on what basis are you challenging it?" In answering the judge, defense counsel seemed to focus on the appearance of fairness if Major C continued to sit, as she did with Major D. The military judge concluded the members' demeanor and answers to individual voir dire questions showed they would be impartial. The judge also concluded each member's expertise in child sexual abuse matters was not sufficient to disqualify the member in and of itself, and each member agreed their personal beliefs would yield to the evidence and judge's instructions.

Later in the trial (at page 706 in this 1065 page record), defense counsel renewed her challenges after the two members extensively questioned the defense expert on child sexual abuse. As defense counsel put it, "They have both just presented multiple questions that are victim-oriented questions revealing knowledge of theories that tend to support the credibility of the victim." Once again, the military judge denied the challenges, this time summarily.

During oral argument, appellate defense counsel focused mainly on the challenge to Major C, conceding there was "less of an argument as to Major D."

### Standard of Review

▆ Both the prosecution and defense are entitled to court members who will keep an open mind, decide the case on the evidence presented in court, and follow the judge's instructions on the law. While the side that raises a challenge for cause has the burden of proving the grounds for it, the military judge should view challenges for cause with a liberal eye. However, we will reverse the military judge's denial of a challenge for cause only for a clear abuse of discretion. *United States v. Hamilton,* 41 M.J. 22 (C.M.A.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 738, 130 L.Ed.2d 640 (1995); *United States v. McLaren,* 38 M.J. 112 (C.M.A.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); *United States v. Reynolds,* 23 M.J. 292 (C.M.A.1987).

### Discussion

▆ As the military judge astutely pointed out at trial, an individual is not disqualified from serving as a court member in a case involving child sexual abuse solely because the individual possesses some expertise in that field. *United States v. Towers,* 24 M.J. 143 (C.M.A.1987). Likewise, an individual is not disqualified from serving as a court member solely because the individual, or a family member, has been the victim of a crime similar to the one charged against the accused. *United States v. Reichardt,* 28 M.J. 113 (C.M.A.1989); *United States v. Smart,* 21 M.J. 15 (C.M.A.1985). Instead, the military judge must determine whether an actual or implied bias exists which disqualifies the member.

▆ An actual bias exists when the member has a personal belief or attitude that will not yield to the evidence and the judge's instructions on the law. An implied bias exists when the member's continued presence would cast substantial doubt on the "legality, fairness, and impartiality" of the trial. *See* R.C.M. 912(f)(1)(N); *Reynolds; United States v. Moyar,* 24 M.J. 635 (A.C.M.R.1987).

▆ Generally, the military judge is in the best position to determine actual court member bias as that question "is essentially one of credibility, and therefore largely one of demeanor." *Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984). In deciding a question of actual bias, the military judge may weigh a court member's responses to voir dire questions in relation to the member's demeanor, and deny the challenge if the judge determines the member will be impartial. *E.g., Reynolds.*

▆ However, when an issue of implied bias arises, the military judge must focus on the system's appearance of fairness and not just the court member's disclaimer of bias—military trials must not only be fair, but also appear to be fair, particularly when the gov-

ernment selects the court members. *See United States v. Lake*, 36 M.J. 317 (C.M.A. 1993); *Smart; United States v. Miller*, 19 M.J. 159 (C.M.A.1985); *United States v. Abdelkader*, 34 M.J. 605 (A.F.C.M.R.1992).

Thus, the military judge should grant a challenge for cause if necessary to preserve the appearance of fairness in the trial, even if the judge believes the challenged member will be impartial. *Compare United States v. McDavid*, 37 M.J. 861 (A.F.C.M.R.1993) (military judge properly denied challenge of security policeman), *pet. denied*, 39 M.J. 405 (C.M.A.1994) *with United States v. Swagger*, 16 M.J. 759 (A.C.M.R. 1983) (military judge should've granted challenge of provost marshal to preserve appearance of fairness). As appellate government counsel conceded during oral argument, in determining whether implied bias exists, the military judge should consider whether a reasonable, disinterested layman would believe the proceedings smacked of unfairness if the challenged member continues to sit.

Here, defense counsel initially focused on implied bias and not actual bias, particularly regarding Major C who, she specifically conceded, was honest in his statements of impartiality. While the military judge resolved the issue using an actual bias analysis, we conclude he did not err in denying the challenge.

On the actual bias part of the equation, we agree with the trial judge that both members were unequivocal in their statements of impartiality and ability to follow the judge's instructions on the law. We were particularly impressed, as was the trial judge, with their forthrightness in discussing intensely personal matters with a courtroom of strangers.

While defense counsel renewed her objection based on actual bias after the members questioned the expert witness, we still agree with the trial judge that these two members were impartial. Granted, the members asked numerous questions throughout the trial, but so did all the court members. This court panel was not content to sit back in a passive role; instead, they asked numerous questions of every witness, and recalled witnesses. We find Majors C and D remained impartial in their questioning of the expert. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

However, the issue of implied bias is a much closer call in this case, particularly where the members had immediate family who had been the victims of crimes similar to that charged against the appellant, and both had extensive knowledge of issues which would arise in expert testimony. *See United States v. Kelley*, 40 M.J. 515 (A.C.M.R.1994); *Moyar*. Recognizing, of course, that appearances of fairness are usually in the eye of the beholder, and you can't please everyone all the time, we find defense counsel failed to carry her burden of proving that either member's presence would create a substantial doubt on the legality, fairness, and impartiality of the trial.

In this regard, we find a reasonable, disinterested layman would conclude that neither the voir dire nor the members' actions during trial reveal an appearance of evil. Instead, we believe that layman would find it paints a picture of two officers who conscientiously answered the questions presented without equivocating and who clearly understood their duty to serve as impartial triers of fact. Article 66(c), UCMJ; *cf. Kelley* (challenged member gave "equivocal" answers); *Moyar* (challenged member gave "puzzling" answers). Consequently, we conclude the military judge did not abuse his discretion in denying the challenge—after all, close calls are what exercising discretion is all about. *See United States v. Houser*, 36 M.J. 392, 397 (C.M.A.), *cert. denied*, — U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993) (abuse of discretion defined).

## MOTION TO SEVER

Defense counsel unsuccessfully moved to sever the offenses involving alleged acts with daughter KDB from those with Sergeant BW. *See* R.C.M. 906(b)(10). Appellant claims the joinder of charges was inappropriate because the offenses involving the two alleged victims were completely unrelated save for one "common fact" connecting them, appellant's use of a vibrator in his sexual repertory. Appellant asserts there was a

high danger of "spillover" from the two sets of offenses, basically along the lines of the adage, where there's smoke, there's fire.

### Standard of Review

■ The convening authority has discretion to refer two or more offenses charged against an accused to one court-martial for trial, regardless of whether the offenses are related. R.C.M. 601(e)(2). However, the accused may move to sever the offenses "but only to prevent a manifest injustice." R.C.M. 906(b)(10). We review the military judge's denial of an accused's motion to sever for an abuse of discretion. *United States v. Foster*, 40 M.J. 140 (C.M.A.1994).

### Discussion

■ Spillover is not the test for whether the military judge should grant a severance; manifest injustice is. *United States v. Curry*, 31 M.J. 359, 372–73 (C.M.A.1990). Here, appellant's own argument seems to negate his theory of prejudice. As the Court of Appeals for the Armed Forces, then the Court of Military Appeals, pointed out in *United States v. Haye*, 29 M.J. 213 (C.M.A. 1989), "where the offenses are totally dissimilar" the danger of prejudice to an accused "is less likely." *Haye*, 29 M.J. at 215.

■ In any event, the military judge specifically instructed the members that they must keep the evidence proving one offense "separate" from the evidence proving another and "take every element of every specification and find that independently of every other element." Such a tailored instruction on spillover reduces the risk that court members will improperly use one offense to prove another. *Foster*, 40 M.J. at 148. We conclude the military judge did not abuse his discretion in denying the motion to sever and avoided any spillover by a tailored instruction.

■ Additionally, we note that defense counsel addressed the issue of spillover during voir dire. She asked the members, "If Master Sergeant Barrow admits to you having had an adulterous affair with an adult woman, are you necessarily going to assume that the allegations against him by his daughter [KDB] are true?" Each member replied no. Defense counsel followed with several more questions in the same vein, each time receiving a correct reply that they would not find appellant guilty of offenses involving KDB simply because they found he engaged in sex with Sergeant BW. While voir dire questions and answers are not evidence in the case, they do show the members were aware of their responsibilities and would follow the judge's spillover instruction. *See United States v. Garcia*, 40 M.J. 533, 538 (A.F.C.M.R.1994).

## EVIDENCE OF ONE SPECIFICATION USED TO PROVE ANOTHER

### Background

In the initial evidentiary session, defense counsel moved *in limine* to prevent the prosecution from offering evidence that appellant used a vibrator in his sexual encounters with Sergeant BW. The prosecutor argued the vibrator evidence was *"res gestae,"* or part and parcel, of their sexual affair and was also admissible to prove appellant's *"modus operandi"* in seducing females, at least Sergeant W and KDB. After performing the balancing test of probative value versus prejudice outlined in Military Rule of Evidence 403, the military judge admitted the evidence as *res gestae*, but reserved ruling on the alternative theory.

Both KDB and Sergeant BW described Prosecution Exhibit 1 as similar to the vibrator appellant used on them. Both witnesses also described how appellant showed them sexually explicit magazines. However, KDB described sexual activity with appellant that almost mirrored her activity with Sergeant M, including the use of sexually explicit magazines and a vibrator to stimulate her. Appellant testified concerning KDB's allegations and denied committing any sexual acts with her. He testified that the vibrator belonged to his wife and they used it in "bed." Appellant argued that KDB falsely accused him to curry favor with Sergeant M after the couple's relationship cooled, and she made up details for the allegations by drawing upon sexual techniques that M taught her.

Before closing argument on findings, defense counsel renewed her motion *in limine*, this time to prevent the prosecutor from arguing any link between the two victims because of appellant using magazines or vibrators. In a very succinct ruling, the military judge stated, "The court will permit that argument." During closing argument, the prosecutor contended there was "similarity" and "consistency" between appellant's sexual acts with KDB and his acts with Sergeant BW because appellant used a vibrator and "pornographic" magazines to stimulate them. Defense counsel did not request a specific limiting instruction, although the military judge instructed on various "uncharged misconduct" and spillover, as we discussed above.

*Standard of Review*

A prosecutor may argue that evidence relating to one charged offense somehow proves another unrelated charged offense when the evidence meets the criteria for admissibility under Military Rule of Evidence 404(b) such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Diaz*, 39 M.J. 1114, 1117–8 (A.F.C.M.R.1994) and cases cited therein. Before allowing the argument, the military judge should make specific findings on how the criteria of Rule 404(b) are met and, in a members trial, instruct the members on how to use the evidence in deciding issues in the case. We review the military judge's decision to permit such an argument for an abuse of discretion. *Id.* at 1118.

*Discussion*

We conclude the military judge implicitly ruled the evidence concerning appellant's use of vibrators and "pornography" met the criteria for Rule 404(b) when he allowed the prosecutor to link the two offenses after earlier deferring a ruling on that point. We also conclude his ruling was not an abuse of discretion.

Appellant's use of vibrators and sexually explicit magazines with Sergeant BW was admissible as part and parcel of the charged offenses involving their sexual rela-

tionship. In this regard, evidence of other acts that occurred during the commission of a charged offense are admissible if the charged and uncharged acts are intertwined and the relevance of the evidence is not substantially outweighed by the danger of unfair prejudice. *See* Mil.R.Evid. 403; *United States v. Metz*, 34 M.J. 349 (C.M.A.1992); *United States v. Peel*, 29 M.J. 235, 239 (C.M.A.1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990). Consequently, the government did not have to charge appellant with every kiss and every act of foreplay to make that evidence admissible when it charged appellant with engaging in a criminal course of sexual conduct with Sergeant BW.

As already discussed, the thrust of appellant's case on the child sexual abuse offenses was that KDB gained all of her sexual knowledge, particularly using sexual aids like vibrators, from Sergeant M and not appellant. Consequently, appellant made an issue of the "identity" of KDB's "sexual" teacher.

Evidence that appellant used identical sexual aids with KDB and Sergeant BW would show a "distinctive technique," or *modus operandi*, in his sexual repertory which would have a "tendency to make the existence of [the identity of KDB's teacher] more probable or less probable than it would be without the evidence." Mil.R.Evid. 401 (relevant evidence); *United States v. Rappaport*, 22 M.J. 445, 446 (C.M.A.1986). *See United States v. Reynolds*, 29 M.J. 105 (C.M.A.1989) (*modus operandi* evidence admitted to prove fact in issue other than identity of perpetrator). *See also Metz* (evidence offered under Rule 404(b) to prove identity and intent); *United States v. Acton*, 38 M.J. 330 (C.M.A. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994) (to prove plan and intent); *United States v. Jones*, 32 M.J. 155 (C.M.A.1991) (to prove identity). The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice to appellant. Mil.R.Evid. 403. Thus, the military judge did not err in permitting the prosecutor to link the evidence concerning the offenses in argument.

Absent a defense request, the military judge did not have to give a tailored instruction to the members restricting their use of the *modus operandi* evidence linking the charged sexual offenses. Mil.R.Evid. 105; *United States v. Borland*, 12 M.J. 855 (A.F.C.M.R.1981). However, we repeat our advice in *Diaz*—the better practice is to give such an instruction, which may judicially salvage an otherwise sinking appellate case. In any event, we conclude in this case that all of the military judge's tailored instructions on spillover and other acts of "uncharged misconduct" precluded improper use of the evidence.

Moreover, even if the judge did err, we find the error harmless. Article 59(a), UCMJ. The prosecutor's comments linking the evidence were very brief and did not encourage the members to convict appellant of one offense if they found another to exist, the military judge instructed the members that they must keep the offenses separate, and the prosecution's case on the offenses for which appellant was ultimately convicted was not a close call in our book. *Cf. Diaz*, 39 M.J. at 1118. As to the latter, we find appellant's testimony, and that of his wife who testified in his defense, incredible. Article 66(c), UCMJ.

## FACTUAL SUFFICIENCY

### Background

The court members deliberated over 3 days during which they recalled KDB to testify and replayed her entire testimony. Ultimately, the court members acquitted appellant of having sexual intercourse with KDB, but convicted him of fondling her, placing his hands and vibrators on her private parts, and showing her sexually explicit magazines. (As discussed earlier, the convening authority set aside the guilty finding for showing sexually explicit magazines.) Appellant complains the members' verdicts of acquittal and conviction are inconsistent since they must have concluded KDB was not a credible witness. Thus, appellant argues the evidence is factually insufficient to support the indecent acts conviction which rested on KDB's testimony.

Additionally, appellant contends the evidence is legally and factually insufficient to prove he committed oral sodomy with Sergeant BW because she only described the acts as "oral intercourse" without specifically describing the statutory element of penetration. *See* Article 125, UCMJ, 10 U.S.C. § 925.

### Discussion

### A. Inconsistent Verdict

As to the child sexual abuse conviction, we are not aware of any rule of law that declares a trier of fact must believe all of a victim's testimony in order to convict an accused of an offense, and appellate defense counsel hasn't cited us to any "all or nothing" authority. Instead, the long standing rule is that "the fact-finders may believe one part of witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A.1979). Moreover, inconsistent verdicts, whether from judge or jury, provide no grounds for reversal of a conviction. *See, e.g., United States v. Snipes*, 18 M.J. 172 (C.M.A.1984).

However, if we were looking for a reason why the members believed KDB as to the touching, we could find it in the record. Eddie R, one of KDB's old boyfriends, testified that she told him in October 1989 (there was conflicting evidence as to the date) that she once awoke to find appellant "fingering her vagina." *See* Mil.R.Evid. 801(d)(1)(B) (prior consistent statement). Under Article 66(c), Uniform Code of Military Justice (UCMJ), we sit as a three-judge second jury on this case, making allowances for not having personally observed the witnesses. Having made such allowances, we also find the accused guilty beyond a reasonable doubt of committing indecent acts with KDB as alleged. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

### B. "Oral Intercourse" As Sodomy

As for the sodomy offense, we have held that the term "oral sex," standing alone, is legally insufficient to prove the required element of penetration for sodomy. *United States v. Powell*, 40 M.J. 768 (A.F.C.M.R.

1994); *United States v. Hansen,* 36 M.J. 599 (A.F.C.M.R.1992), *pet. denied,* 38 M.J. 229 (C.M.A.1993).

 Sergeant BW described a variety of sexual activity with appellant including that they had "sexual and oral intercourse" and "attempted anal intercourse." (The military judge instructed the members only on oral sodomy without any lesser-included offense of sodomy by attempted anal intercourse). The military sodomy statute, Article 125, UCMJ, requires "unnatural carnal copulation." "Intercourse" is a synonym for "copulation" as is "sex." Webster's New World Thesaurus 399 (Rev. ed. 1985). However, we conclude the term "intercourse" connotes, in common experience and language, an act of penetration that the term "sex" does not. Consequently, we conclude **in this case** that the evidence is both legally and factually sufficient to prove oral sodomy.

However, we repeat that courts would not have to engage in such linguistic gymnastics and cases would not languish on appeal on issues of semantics if prosecutors would just ask witnesses to describe acts instead of speaking in legal conclusions or slang.

## REMAINING ISSUES

 We conclude the military judge properly denied appellant's motion to suppress the vibrator on grounds of staleness (last seen by KDB in appellant's house 2–3 weeks before search authorization), and we adopt his factual findings as our own. Arti-cle 66(c), UCMJ; *United States v. Lopez,* 35 M.J. 35 (C.M.A.1992).

 We also conclude the government expert psychologist did not give inadmissible "human lie detector" testimony when he testified that KDB had "borderline traits … consistent with those of an incest victim." *See United States v. Suarez,* 35 M.J. 374 (C.M.A.1992). Finally, we conclude the psychologist's opinion that "there is higher frequency of molestation by stepfathers as opposed to biological fathers" was properly admitted as rebuttal to defense expert evidence that appellant's family did not "present the dynamics of a typical incest family." *See United States v. Pagel,* 40 M.J. 771 (A.F.C.M.R.1994) (prosecution "profile" evidence admissible in rebuttal to defense "profile" evidence).

## CONCLUSION

The findings and sentence are correct in law and fact, and on the basis of the entire record are

AFFIRMED.

Senior Judge SNYDER and Judge SCHREIER concur.