# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Adam M. PYRON**
Master-at-Arms Second Class, (E-5), U.S. Navy
*Appellant*

**No. 201900296**

Argued: 5 April 2021—Decided: 29 April 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Stephen C. Reyes

Sentence adjudged 19 July 2019 by a general court-martial convened at U.S. Naval Fleet Activities Yokosuka, Japan consisting of officer members. Sentence approved by the convening authority: 39 years' confinement, reduction to E-1, and a dishonorable discharge.[1]

For Appellant:
*Emmanuel V. Tipon, Esq.* (argued)
*Lieutenant Megan Horst, USN* (on brief)
*Major Thomas R. Fricton, USMC* (on brief)

---

[1] The convening authority deferred and waived all forfeitures of pay and allowance by operation of law for six months from the date of convening authority's action.

For Appellee:
*Lieutenant John L. Flynn, JAGC, USN* (argued)
*Lieutenant Gabriel K. Bradley, JAGC, USN* (on brief)
*Lieutenant Joshua C. Fiveson, JAGC, USN* (on brief)
*Major Clayton L. Wiggins, USMC* (on brief)

––––––––––––––––––––––––

**PUBLISHED OPINION OF THE COURT**

––––––––––––––––––––––––

Judge DEERWESTER delivered the opinion of the Court, in which Chief Judge MONAHAN and Senior Judge STEPHENS join.

––––––––––––––––––––––––

DEERWESTER, Judge:

Appellant was convicted, contrary to his pleas, of two specifications of attempted rape of a child, one specification of rape of a child, and four specifications of sexual abuse of a child, in violation of Articles 80 and 120b, Uniform Code of Military Justice [UCMJ].[2]

Appellant asserts four assignments of error [AOEs]: (1) the military judge erred in denying a Defense challenge for cause on grounds of implied bias; (2) the military judge erred in denying the Defense request for a mistrial for sentencing because the curative instruction provided was insufficient to remedy the prejudicial effect of expert testimony from a Government witness that was later sua sponte struck by the military judge; (3) a Rule for Courts-Martial [R.C.M.] 810(f)(1) fact-finding hearing was warranted to ascertain the facts surrounding an allegation that a court-martial member "high-fived" members of the Region Legal Service Office[3] immediately after the conclusion of the trial; (4) the military judge erred in not awarding day-for-day credit pursuant to R.C.M. 305(k) because the initial review officer violated the requirements of R.C.M. 305(i)(2)(D) by failing to annotate whether the victims' Article 6b, UCMJ, rights were protected.

––––––––––––––––––––––

[2] 10 U.S.C. §§ 880, 920b.

[3] The command of the Prosecution team.

2

We find prejudicial legal error with regard to Appellant's first AOE. Specifically, we find that the military judge erred in denying the Defense challenge for cause of Lieutenant [LT] Alpha[4] under the implied bias standard and the liberal grant mandate. Due to our resolution of this AOE, we find the other AOEs moot, and we take action in our decretal paragraph.

## I. BACKGROUND

### A. Appellant is Reported to the Naval Criminal Investigative Service and Prosecuted at a General Court-Martial

In 2019, Appellant, a Navy petty officer stationed in Yokosuka, Japan, spent the day watching the Super Bowl at a family friend's house. His friend, a Navy civilian employee, lived in off-base housing with his wife, two sons, 16-year-old step-daughter, and two daughters: an 8-year-old and a 6-year old. That evening, after the parents had retired for the night to their bedroom, Appellant brought both the 8- and 6-year-old girls downstairs, and while there, exposed his penis to both of them and rubbed his penis on the 8-year-old's leg. After the 8-year-old ran back upstairs to bed, Appellant placed his penis into the mouth of the 6-year-old and asked her to remove her pull-up diaper so that he could cause contact between her vulva and his mouth. After the 6-year-old returned to her bedroom, he followed her there to ask her to place her mouth on his penis again. When she refused, Appellant went back downstairs for the evening.

The following morning, while getting dressed for the day, both girls told their mother what happened. She reported this to military law enforcement. After Appellant made substantial admissions to the charged conduct tantamount to a confession and DNA analysis was performed, charges were referred to a general court-martial for the offenses for which he now stands convicted.

### B. Voir Dire

During voir dire, trial defense counsel [TDC], concentrated questioning on multiple members who had children similar in age to the victims in this case, questioning each one about their views of the case based on their relationship with their children.

---

[4] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

### 1. *Voir dire of Commander Bravo*

During individual voir dire, Commander [CDR] Bravo, who had a daughter who was sexually assaulted when she was 11-years-old, was asked by the military judge if he felt he could "set [the sex assault of his daughter] aside and approach [Appellant's case] based on the evidence." CDR Bravo responded, "I believe I can set it aside."[5] Trial counsel then got even more to the point, asking CDR Bravo if he could "honestly leave [the sex assault of his daughter] outside the courtroom and approach this with fresh eyes and base it on the law and the evidence as the facts develop in this case and the judge instructs you?"[6] Again, CDR Bravo said that he could. TDC then asked if CDR Bravo thought about his girls when he read the charge sheet, and CDR Bravo admitted he did.

### 2. *Voir dire of Commander Sierra*

CDR Sierra was the next member to undergo individual voir dire, during which he had a colloquy with the military judge about a close family member (his wife), who was sexually assaulted when she was a child roughly the same age as the victims. The military judge asked CDR Sierra if he thought these facts and circumstances would raise a substantial question about his participation in Appellant's trial, and CDR Sierra said he did not think it would. TDC then asked if he "heard testimony of a child or two coming in who are under the age of 12, [would that] bring back memories of what your wife had told you and what she had gone through?"[7] CDR Sierra stated he "[could]n't say absolutely it would not, but [he] didn't think so."[8] Not satisfied with that answer, trial counsel then asked CDR Sierra if he felt "confident that when you're evaluating this case, you can leave all that outside the courtroom and you will look at this based only on the evidence and the witnesses and the law the judge gives you?" CDR Sierra replied, "I believe so."[9] Again pressing to potentially rehabilitate the witness, the trial counsel asked "Do you feel

---

[5] R. at 333.

[6] *Id.* at 333-34.

[7] *Id.* at 339.

[8] *Id.*

[9] *Id.*

4

confident that you can do that?" CDR Sierra replied, "Not necessarily."[10] No further questions were asked of CDR Sierra.

### 3. *Voir dire of Lieutenant Alpha*

LT Alpha was also brought back for individual voir dire. Initially, the military judge had a brief colloquy with him regarding his ability to maintain focus on the trial if seated due to his current billet. LT Alpha answered that he could. The military judge then turned questioning over to TDC, who asked LT Alpha whether he thought of his daughters, ages 8 and 11, when he read the charges on the charge sheet. LT Alpha answered yes, and when TDC asked LT Alpha "[i]n what capacity" he thought of his daughters, LT Alpha responded "Not in a good way, personally."[11] TDC then asked his final question, "Do you think as you hear the evidence you're gonna think about your girls maybe when you see the witnesses come in and testify."[12] LT Alpha responded "It would be hard not to."[13] TDC had no further questions for LT Alpha. There were no questions from either the trial counsel or the military judge.

### 4. *Challenges for cause*

Among the Defense challenges for cause were CDR Bravo, CDR Sierra, and LT Alpha, each of whom were challenged for implied bias. When discussing CDR Bravo and CDR Sierra, the military judge's resolution of the challenges turned on whether they stated they could leave their thoughts and feelings of their loved ones outside the courtroom when considering Appellant's case. Both TDC and trial counsel agreed that CDR Sierra was not clear he could leave them outside the courtroom, and CDR Bravo was hesitant on whether he could do the same, though perhaps to a lesser degree. The military judge determined that for CDR Bravo and CDR Sierra, due to the close relationship they had with a family member who had experienced sexual assault or abuse as a child, similar to the allegations in this case, they should each be excused.

LT Alpha was also challenged because he had a daughter the same age as one of the victims, and he had responded that he would think of his daugh-

---

[10] *Id.* at 340-41.

[11] *Id.* at 357.

[12] *Id.*

[13] *Id.*

5

ters, in a bad, personal way while listening to evidence in the case. TDC cited the liberal grant mandate in his argument.

In response to TDC's argument, trial counsel first stated that "many of our members have kids. If we're gonna strike all of them that have kids, we're not gonna have a panel."[14] The military judge then focused trial counsel on the statement that it would be hard not to think of his kids when hearing evidence. Trial counsel replied:

> I think, again, it's hard for anybody not to think of the children in their lives when it comes to these charges. Specifically with respect to [LT Alpha], he was also very clear that he can leave that outside; that it won't color the way that he looks at this case. That he'll evaluate it based on the—the facts and the—the facts and the circumstances at issue. . . . If you look at the totality of his responses to the answers, he was very clear that he can leave it outside. He was very matter of fact. He is a professional. And so I think unlike [CDR Bravo and CDR Sierra] [LT Alpha] is a much clearer, impartial member. No one outside the courtroom is gonna look in and say that he got—that the Accused got an unfair trial based on his presence on the panel.[15]

After hearing argument from TDC and trial counsel, the military judge denied the challenge of LT Alpha under the implied-bias standard finding:

> Now with respect to his thoughts about his children, in the given—the Court agrees with the Government's interpretation of the answers given by [LT Alpha]; that given the totality of how the answers were provided by [LT Alpha] that an outside observer would not believe that there was going to be an unfair trial. And so, even in light of the liberal grant mandate, even in light of the standard, defense counsel's challenge for [LT Alpha] is denied.[16]

---

[14] *Id.* at 402.

[15] *Id.* at 402-03.

[16] *Id.* at 403.

II. Discussion

**A. Did the Military Judge Abuse His Discretion in Denying Appellant's Challenge of Lieutenant Alpha for Implied Bias?**

*1. Standard of review and the law*

While we generally give a "military judge's ruling on a challenge for cause . . . great deference,"[17] we review rulings on challenges for implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo."[18] This standard recognizes that implied bias deals with the public's objective perception of the fairness of the military justice system, and not simply the military judge's assessment of whether a challenged member can serve in a fair and impartial manner.[19] "[W]e evaluate implied bias objectively, 'through the eyes of the public,' reviewing 'the perception or appearance of fairness of the military justice system.' "[20] We will give greater deference where a military judge puts on the record his analysis and basis for denying a defense challenge for cause and indicates that he considered the liberal grant mandate.[21] Although it is not required for a military judge to place his or her implied bias analysis on the record, doing so is "highly favored and warrants increased deference from appellate courts."[22] This is because it provides a "vantage point of a military judge observing members in person and asking the critical questions that might fill any implied bias gaps left by counsel."[23] However, a mere "[i]ncantation of the legal test [for implied bias] without analysis is rarely sufficient in a close case."[24] We afford a military judge less deference if an analysis of the implied bias challenge on the record is not

---

[17] *United States v. Rolle*, 53 M.J. 187, 191 (C.A.A.F. 2000) (citations and internal quotation marks omitted).

[18] *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002) (citations omitted).

[19] *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008).

[20] *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008).

[21] *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017); *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

[22] *Dockery*, 76 M.J. at 96.

[23] *Clay*, 64 M.J. at 277.

[24] *Unites States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015).

provided.[25] In applying this standard, we look to the totality of the circumstances.[26]

The test for implied bias takes into account, among other distinct military factors, the confidence appellate courts have that military members will be able to follow the instructions of military judges and thus, while it will often be possible to rehabilitate a member on a possible question of actual bias, questions regarding the appearance of fairness may nonetheless remain.[27] The issue therefore is whether the risk the public will think the accused received anything less than a fair trial is "too high."[28]

Further, the liberal grant mandate requires the military judge to err on the side of granting a defense challenge.[29] That is, "if after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted."[30] This serves as a preventive measure because "it is at the preliminary stage of the proceedings that questions involving member selection are relatively easy to rapidly address and remedy."[31]

In *United States v. Woods*,[32] *United States v. Rogers*,[33] and *United States v. Peters*, [34] the Court of Appeals for the Armed Forces [CAAF] found that it was error for a particular member to sit on the panel after the military judge had failed to grant a meritorious implied bias challenge for cause. After making this determination, CAAF did not conduct a prejudice analysis in any

---

[25] *United States v. Bagstad*, 68 M.J. 460 (C.A.A.F. 2010) (citing *United States v. Richardson*, 61 M.J. 113, 120 (C.A.A.F. 2005)).

[26] *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012).

[27] *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015).

[28] *Id.* (quoting *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008).

[29] *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (citing *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)).

[30] *Id.*

[31] *Id.* (citing *Clay*, 64 M.J. at 277).

[32] 74 M.J. 238.

[33] *United States v. Rogers*, 75 M.J. 270, (C.A.A.F. 2016).

[34] 74 M.J. 31.

of these cases.[35] Similarly, when considering whether the military judge failed to properly grant an implied bias challenge, we consider the "totality of the circumstances." However, we consider neither the evidence adduced at trial nor what the final result of the trial happened to be.[36] This is based on sound logic. We must only consider whether an accused, who selected trial by members as was his legal right, received a fair trial from its start, and was judged by unbiased members, regardless of the evidence that ultimately may have established his guilt. Further, the same members adjudged a sentence, and the perception of bias could extend beyond the findings to the sentence adjudged by the members. No accused, regardless of the amount of evidence the government may have to prove his guilt, can receive a fair trial if biased members are permitted to sit in judgment. As such, the analysis of this issue focuses solely on the voir dire process, without consideration of the evidence the government later presents at trial on the merits, and whether, under the totality of the circumstances, the public would believe an accused received a fair trial with the challenged member sitting on the panel.

*2. Analysis*

Here, LT Alpha, while filling out his court-martial questionnaire, stated that he had two young daughters, ages 8 and 11. As the Government correctly points out, a member having two daughters close in age to the victims in the case does not necessarily mean he or she cannot give an accused a fair trial, nor do we establish a bright-line rule that individuals who have children close in age to victims in a case may not sit as member. Multiple members on Appellant's panel had children close in age to the victims in this case, and not all were subject to challenge.

Rather, the issue arose when LT Alpha stated in individual voir dire that he not only thought about his daughters when he reviewed the charge sheet prior to voir dire, but did so in "not a good way." He further stated that "it

---

[35] We are unaware of any case in which CAAF conducted such a prejudice analysis following a determination that a challenged member sat on a court-martial panel following a military judge's erroneous denial of a challenge for case against that member.

[36] *See Nash*, 71 M.J. at 89 n. 4 ("[I]t is incumbent upon military judges to tailor the application of the implied bias test *to the context presented.*") (emphasis added). Reviewing courts thus look at the totality of factors and circumstances, but not complete an evidentiary review of the entire case or outcome. *See, e.g.*, *Woods*, 74 M.J. at 243-45; *Peters*, 74 M.J. at 35-36; *Nash*, 71 M.J. at 88-90; *Strand*, 59 M.J. at 459-60.

would be hard not to" think about his daughters when witnesses testified throughout the trial. Remarkably, unlike CDR's Bravo and Sierra, neither trial counsel nor the military judge asked any further questions of LT Alpha. It is possible that LT Alpha's comments could have been reconciled in a way that rehabilitated him as an unbiased member. However, neither the trial counsel nor the military judge attempted to rehabilitate him. Nor did the military judge or the parties provide LT Alpha a warning that he must disregard any feelings concerning his own daughters when conducting his deliberations and voting on findings and sentence. Most importantly, because he was not asked a single rehabilitative question, the public is left with the impression that every time a witness testified, LT Alpha would be thinking of his own daughters "not in a good way," not only because he told counsel it would be hard not to, but because he was never instructed by the military judge not to do so.

The Government asks us to compare this case to similar fact patterns in *Castillo*,[37] *Barrow*,[38] and *McDonald*.[39] While the denial of challenges for cause in all three of these cases were upheld, in each case a full colloquy was conducted to establish the fact that the member could disregard the presumptive bias and decide the case solely on the evidence presented.

In *Castillo,* the accused was charged with sexual assault. One member was a sexual assault victim himself. In a colloquy with the military judge, the member testified that the assault would not impact his ability to judge the case, because he did not view the case on trial "as the same issue at all."[40] The military judge denied the challenge for cause, finding that based on observing his demeanor, the incident would not affect his deliberations in the case.[41] CAAF upheld the judge's ruling; however, Judge Ryan, in a concurring opinion, clearly outlined the way in which to consider these issues:

> It is my view that, where the correct law is recognized and there is no erroneous application of the law or view of the facts, military judges should receive the deference to which they are

---

[37] *United States v. Castillo*, 74 M.J. 39 (C.A.A.F. 2015).

[38] *United States v. Barrow*, 42 M.J. 655 (A.F. Ct. Crim. App. 1995).

[39] *United States v. McDonald*, 57 M.J. 747 (N-M. Ct. Crim. App. 2002), *rev'd on other grounds*, 59 M.J. 426 (C.A.A.F. 2003).

[40] *Castillo*, 74 M.J. at 42.

[41] *Id.*

entitled under our precedent on matters of implied bias. This Court is better suited to remind military judges that challenges are to be liberally granted . . . .[42]

The military judge in *Castillo* not only rehabilitated the member, but also correctly applied the facts of the case to the correct legal standard. In Appellant's case, neither occurred. LT Alpha was never rehabilitated, and the military judge denied the Defense's challenge utilizing incorrect facts. As such, Appellants case is distinguishable from *Castillo.*

*Barrow* is a 1995 case from the Air Force Court of Criminal Appeals [AFCCA]. There, the accused was convicted by a panel of members of sexual assault of his stepdaughter. Two members had close family members who were victims of sexual assault, and both members were challenged by defense counsel for implied bias. During a lengthy colloquy with the military judge, both members stated they could be impartial, would not let personal experiences impact on Appellant's case, and had not formed any conclusions regarding allegations of rape or child sexual abuse.[43] The military judge then denied the challenges, and AFCCA affirmed. The Court of Appeals for the Armed Forces found this was a close call, but determined that "after all, close calls are what exercising discretion is all about."[44] As CAAF has repeatedly said, based on the liberal grant mandate, if there is a "close call," the military judge should grant the challenge for cause.

Finally, the Government highlights this Court's 2002 opinion in *McDonald,*[45] a case with facts closely analogous to Appellant's case. *McDonald* involved child sexual abuse in which two potential members expressed concern about whether they could keep feelings they have for their own daughters from the deliberative process. Defense counsel challenged two members, both chief petty officers (E-7), based on similar answers to voir dire questions as LT Alpha gave in Appellant's case. This Court found one of the chief's answers particularly close, in that he originally said he would *try* to separate his daughters from the deliberative process and listen only to the facts of the case, but when pressed further by defense counsel stated that he "[thought] he could."[46] When the military judge ruled on the challenge for

---

[42] *Id.* at 44.

[43] *Barrow*, 42 M.J. at 659.

[44] *Id.* at 661.

[45] *McDonald*, 57 M.J. 747.

[46] *Id.* at 752.

11

cause, he applied the correct facts to his analysis, and determined that the candor and thoughtfulness of the member warranted keeping him on the panel. By contrast, the military judge here based his ruling on incorrect facts. Additionally, in *McDonald* the member was rehabilitated, stating he thought he could keep separate his feelings for his own daughters outside the deliberative process, and he was clearly instructed that it was necessary for him to do so. Here, LT Alpha never stated he could separate his feelings for his daughters from the deliberative process, in fact said it would be hard to do just that, and was never told he was required to do so. As such, *McDonald* is distinguishable from Appellant's case. What most clearly distinguishes this case from *Castillo*, *Barrow*, and *McDonald* is the lack of any attempt to rehabilitate the court member.

At oral argument, the Government argued that the trial counsel, and by implication the military judge, were not mistaken when they stated that LT Alpha was very clear that he could leave his thoughts of his daughters outside Appellant's case, and that he would evaluate Appellant's case based solely on the evidence. Specifically, the Government asserted that the trial counsel was drawing upon LT Alpha's answers during general voir dire when he provided his rationale for the military judge to deny the Defense's challenge for cause against that member. We find the Government's position on this issue to be unpersuasive. The general voir dire questions were vague questions asked of all members, from which a simple hand raise was utilized to signal concurrence. These questions did not permit clarification or specificity. Thus, LT Alpha was not "very clear" about any response he gave, other than it would be hard not to think of his daughters when he saw the witnesses testify. Moreover, he was never instructed that he must deliberate and vote on findings and sentence [if necessary] in this case without regard to his thoughts of his daughters.

In Appellant's case, neither the trial counsel nor the military judge conducted a colloquy with LT Alpha in an attempt to rehabilitate him and to inform him that he was prohibited from thinking about his daughters while listening to the testimony and considering the other evidence. Therefore, an objective member of the public, and this Court, are left to reasonably infer that LT Alpha would have a hard time not thinking about his daughters during the court-martial and that his deliberations and votes on findings and sentence in the case were conducted while he viewed the evidence through that impermissible lens. Even worse, the trial counsel made arguments regarding the challenge for cause that suggested a rehabilitation colloquy

12

had been conducted,[47] and the military judge adopted those incorrect facts and based his denial of the challenge upon them. Contrary to the trial counsel's claim, there was no clarification of LT Alpha's responses, much less anything to suggest he was "very clear that he could leave it outside," or that it "won't color the way that he looks at the case." As LT Alpha was never asked those questions, the record is absent of any evidence to support that what the trial counsel was arguing was, in fact, true.

This implied bias challenge for cause at issue was, at best, a very close call. LT Alpha answered truthfully and openly that he would have a hard time not thinking about his daughters throughout the course of the trial. This should have alerted the military judge to the fact that he was struggling to separate his own personal feelings and opinions about his daughters from the evidence and facts of Appellant's case. Due to the lack of additional questioning to clarify and provide instructional guidance on the issue, an objective member of the public cannot be confident LT Alpha was able to do what he himself said was "hard" to do. We decline to guess whether LT Alpha was able to focus on the evidence and not his daughters during Appellant's case, as such speculation flies in the face of the liberal grant mandate. "If after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted."[48] We find under the totality of the circumstances presented that the military judge abused his discretion when he denied Appellant's challenge for cause.

## III. Conclusion

The findings and sentence are **SET ASIDE** and **DISMISSED** and the record is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority with authority to order a rehearing.

Chief Judge MONAHAN and Senior Judge STEPHENS concur.

---

[47] Of note, we do not find that the trial counsel intentionally misled the military judge as to LT Alpha's answers. The court-martial had 14 members in the venire, and the responses trial counsel attributed to LT Alpha were made nearly word-for–word *by other members*. Unlike us, neither the trial counsel nor the military judge had the transcript of the voir dire in front of them. We find this to be an honest mistake.

[48] *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015).



FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court